1  Todd K. Boyer, State Bar No. 203132
   todd.boyer@bakermckenzie.com
2  **Baker & McKenzie LLP**
   660 Hansen Way
3  Palo Alto, CA 94304-1044
   Telephone: +1 650 856 2400
4  Facsimile: +1 650 856 9299

5  Attorneys for Defendant
   Wind River Systems, Inc.
6  (erroneously sued herein as TPG Capital
   Corporation dba Windriver)

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                OAKLAND DIVISION

| | |
|---|---|
| 11  Irvin Farriot, | Case No. |
| 12        Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT WIND RIVER SYSTEMS, INC.** |
| 13     v. | |
| 14  TPG Capital Corporation dba Windriver, a corporation; DOES 1-100, | **28 U.S.C. §§ 1331, 1441** |
| 15 | |
| 16        Defendants. | Alameda County Superior Court Case No. RG19011554 |
| 17 | |
| 18 | Complaint Filed: March 19, 2019 |

19

20

21

22

23

24

25

26

27

28

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Wind River Systems, Inc. ("Defendant") (incorrectly named as "TPG Capital Corporation dba Windriver, a corporation"), by and through its attorneys, Baker & McKenzie LLP, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, hereby files this Notice of Removal, based on federal question jurisdiction, to effect the removal of the above-captioned action, Case No. RG19011554 from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California, and states that removal is proper for the following reasons:

## I.     BACKGROUND INFORMATION

1.     On March 19, 2019, Plaintiff Irvin Farriot ("Plaintiff") filed a *pro se* civil complaint in the Superior Court of the State of California, County of Alameda, entitled *Irvin Farriot v. TPG Capital Corporation dba Windriver, a corporation; DOES 1-100* ("Complaint"). To Defendant's knowledge, TPG Capital Corporation is not an entity that has ever existed, and if it has existed, such entity has no relationship with Wind River Systems, Inc. However, a copy of the Complaint was delivered to Wind River Systems, Inc. Defendant does not concede that it has been properly served or is properly named, and reserves the right to challenge service of the Complaint and/or the adequacy of the Complaint. A true and correct copy of the Summons and Complaint, together with a Civil Case Cover Sheet from the Superior Court of the State of California, County of Alameda, is attached hereto as **Exhibit A.**

2.     The Complaint asserts ten causes of action against Defendant, all of which pertain to whether Defendant discriminated against, retaliated against, harassed, or otherwise mistreated Plaintiff during his employment between 2015 and 2018, based on the factual allegations Plaintiff sets forth in paragraphs 10-38:

- Unlawful Discrimination Under the Unruh Civil Rights Act (First Cause of Action);

- Retaliation in Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*. (Second Cause of Action);

- Harassment in Violation of the Fair Employment and Housing Act (Third

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Cause of Action);

- Discrimination in Violation of the Fair Employment and Housing Act (Fourth Cause of Action);

- Violation of Government Code Section 12940(h) (Fifth Cause of Action);

- Wrongful Discharge Resulting From Harassment and Discrimination (Sixth Cause of Action);

- Wrongful Discharge in Violation of Public Policy (Seventh Cause of Action);

- Negligence (Eighth Cause of Action);

- Intentional Infliction of Emotional Distress (Ninth Cause of Action); and

- Wrongful Discharge in Violation of Public Policy (Tenth Cause of Action).

3. Defendant and Plaintiff are the only named parties in the Complaint.[1] The undersigned counsel represents Wind River Systems, Inc. in this action.

4. Defendant has not yet propounded an Answer to Plaintiff's Complaint.

## II. REMOVAL IS TIMELY

5. This removal is timely. Although Wind River Systems, Inc. does not concede proper service of the summons and complaint, it is removing this matter out of an abundance of caution, having received a copy of the complaint. *See* 28 U.S.C. § 1446(b) (permitting removal after receipt of the complaint "through service or otherwise"); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348-349 (1999) (outlining the deadline for removal after service).

## III. FEDERAL QUESTION JURISDICTION EXISTS.

6. This action is properly removed to this court pursuant to Section 1331, as federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law within the meaning of Section 1331 if either: (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Republican*

---

[1] Plaintiff's Complaint mentions an individual named "Ogans" and/or "Plaintiff Ogans" in Counts Two, Six, Seven, and an individual named "Russell" and/or "Plaintiff Russell" in Count Ten. Such references appear to have been typographical errors--potentially flowing from Plaintiff's use of other complaints in other actions as a template for the one he filed. There is no suggestion that there are any other persons joining as Plaintiffs in this lawsuit.

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT

*Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002)

7.    Here, Plaintiff states a claim for retaliation under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* (*See* Compl. ¶¶ 47-55.)  Title VI of the Civil Rights Act of 1964 is a federal law, over which the Court has original jurisdiction pursuant to Section 1331.

8.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all claims Plaintiff asserts under state law.  Under Section 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Non-federal claims outside of the Court's original jurisdiction form part of the same "case or controversy" when they "derive from a common nucleus of operative fact," such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding."  *Finley v. United States*, 490 U.S. 545, 549 (2003).

9.    All of the claims alleged by Plaintiff assert that he was either discriminated against or harassed on the basis of his race, and that he was retaliated against for making reports of mistreatment on the basis of race.  All such claims therefore arise out of a common nucleus of operative facts and form part of the same case or controversy.  *See, e.g.*, *Ruiz v. Fernandez*, No. CV-11-3088-RMP, 2012 U.S. Dist. LEXIS 58586, at *6 (E.D. Wash. Apr. 26, 2012) (exercising supplemental jurisdiction where "the Plaintiffs' state law breach of contract, wage law, and *quantum meruit* claims all arise from the same employment period and conditions with the Defendant as the federal claims and arise out of the same common nucleus of operative facts."); *Uribe v Mainland Nursery, Inc.*, No. Civ. 2-07-0229, U.S. Dist. LEXIS 90984 (E.D. Cal. December 11, 2007) ("Plaintiffs' federal and state law claims arise out of the same common nucleus of operative facts, specifically their employment relationship with defendant Mainland and their compensation for such employment.").  Supplemental jurisdiction over Plaintiff's non-federal claims is therefore proper.

## IV.    VENUE

10.    Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

1   or the defendants, to the district court of the United States for the district and division embracing the
2   place where such action is pending." Under 28 U.S.C. § 84(a), this Court embraces the Superior
3   Court of the State of California for the County of Alameda. Accordingly, this Court is the
4   appropriate Court to remove this action. 28 U.S.C. § 1441(a).

5   **V.     NOTICE OF REMOVAL**

6          11.    As required by 28 U.S.C. § 1446(d), Defendant will promptly provide written notice
7   of this Notice of Removal to Plaintiff *in pro per*, and will also promptly file a copy of this Notice of
8   Removal with the Clerk of the Superior Court of the State of California, County of Alameda.

9   **VI.    CONCLUSION**

10         12.    As demonstrated above, this Court has original jurisdiction over this action pursuant
11  to 28 U.S.C. §§ 1331 and 1441(a), and having fulfilled all statutory requirements, Defendant
12  removes this action from the Superior Court of California, County of Alameda, to this Court, and
13  requests this Court to assume full jurisdiction over this matter as provided for by law.

15  Dated:  May 21, 2019
                                          BAKER & MCKENZIE LLP

17                                        By: /s/Todd K. Boyer
                                              Todd K. Boyer
18                                            Attorneys for Defendant
                                              Wind River Systems, Inc. (erroneously sued
19                                            herein as TPG Capital Corporation dba
                                              Windriver)

# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY
MAR 19 2019
CLERK OF THE SUPERIOR COURT,
By Lanette Buffin, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TPG CAPITAL CORPORATION DBA WINDRIVER., A
CORPORATION; DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
IRVIN FARRIOT

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* ALAMEDA SUPERIOR COURT
1225 FALLON ST.
OAKLAND, CA 94612

CASE NUMBER:
*(Número del Caso):* RG19011554

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
IRVIN FARRIOT 13288 87TH AVE., OAKLAND CA 94621 (510) 561-9193

DATE: MAR 19 2019  Chad Finke  Clerk, by _____ , Deputy
*(Fecha)*  *(Secretario)*  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
    ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
    ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
    ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| IRVIN FARRIOT<br>1322 87TH AVE.<br>OAKLAND, CA 94621<br><br>TELEPHONE NO.: (510) 561-9193   FAX NO.:<br>ATTORNEY FOR (Name): IN PRO PER | ENDORSED<br>FILED<br>ALAMEDA COUNTY<br>MAR 19 2019<br>CLERK OF THE SUPERIOR COURT<br>By Lanette Buffin, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 1225 FALLON ST.
MAILING ADDRESS:
CITY AND ZIP CODE: OAKLAND 94612
BRANCH NAME: RENE C. DAVIDSON

CASE NAME:
**IRVIN FARRIOT VS. TPG CAPITAL CORPORATION**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | RG19011554<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse<br>condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11) | ☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint (not specified above) (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21) |
| **Employment**<br>☑ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Writ of mandate (02)<br>☐ Other judicial review (39) | ☐ Other petition (not specified above) (43) |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): 10
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 3/10/2019
IRVIN FARRIOT
_____   _____
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer*
    *or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-*
    *domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
  *above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
    *harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified*
  *above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

ENDORSED
FILED
ALAMEDA COUNTY

MAR 18 2019

CLERK OF THE SUPERIOR COURT,
By Lanette Buffin, Deputy

Irvin Farriot
1322 87th Ave.
Oakland, Ca. 94621
Tel: (510) 561-9193
Email: irvinfarriot@yahoo.com

In Propria Persona

## SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Irvin Farriot, as individuals, | Case No.: RG19011554 |
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| v. | **1. UNLAWFUL DISCRIMINATION** |
| | **2. RETALIATION** |
| TPG Capital Corporation dba Windriver., a corporation; DOES 1-100, | **3. HARASSMENT** |
| | **4. DISCRIMINATION** |
| | **5. VIOLATION OF GOVT. CODE SECTION 12940(h)** |
| Defendants. | **6. WRONGFUL DISCHARGE** |
| | **7. WRONGFUL DISCHARGE** |
| | **8. NEGLIGENCE** |
| | **9. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| | **10. WRONGFUL CONSTRUCTIVE DISCHARGE** |

## SUMMARY OF CLAIMS

1. This is an action for damages by Plaintiffs against TPG Capital Corporation dba Windriver., a corporation for a pattern of tortious conduct, involving multiple violations of Title VI of the Civil Rights Act of 1964, the Unruh Civil Rights Act, and the Equal Protection Clause based on harassment and discrimination on the basis of race and the

intentional infliction of emotional distress. Plaintiffs seek compensatory damages, including general damages for mental and emotional distress, punitive damages and statutory attorney's fees.

## **PARTIES**

2. Plaintiff IRVIN FARRIOT ("Plaintiff Farriot") is an African American male residing in the State of California and at all relevant times was an employee of TPG CAPITAL CORPORATION DBA WINDRIVER., a corporation in the City and County of Alameda, California.

3. Plaintiffs are informed and believe and thereon allege that at all relevant times Defendant TPG CAPITAL CORPORATION DBA WINDRIVER., a corporation ("Windriver") is a California corporation licensed to do business by virtue of the laws of the State of California and operating and engaging in business in the City and County of Alameda, California.

4. Plaintiffs are unaware of the true names and capacities of certain yet-to-be-identified individuals, who are sued herein as DOES ("Does") 1 through 100, inclusive. Plaintiffs, therefore, sue these defendants by these fictitious names. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants are responsible in some manner for the acts, omissions and occurrences herein alleged and that Plaintiffs' losses as herein alleged were proximately caused by such acts, omissions and occurrences. Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously named defendants when ascertained.

5. Plaintiffs are informed and believe and thereon allege that at all material times, DOES 1

through 50, inclusive, control Defendant WINDRIVER and exercise substantial authority in devising and implementing personnel policies at Defendant WINDRIVER. Any reference to Defendant WINDRIVER in this Complaint includes DOES 1 through 50, inclusive, as well.

6. Plaintiffs are informed and believe and thereon allege that at all material times, DOES 51 through 100, inclusive, were Plaintiffs' direct supervisors with supervisory authority over Plaintiffs, including, but not limited to, the responsibility to direct Plaintiffs' daily work activities and to make other employment actions affecting Plaintiffs, such as the decisions to hire and/or fire, promote, reward or discipline Plaintiffs. On information and belief, DOES 51 through 100, inclusive, are California residents. In doing the acts complained of herein, such DOE defendants acted individually and as agents of defendants WINDRIVER and DOES 1 through 50, and as such, defendants WINDRIVER and DOES 1 through 50 are liable for the acts of discrimination, harassment and retaliation of DOES 51 through 100, inclusive. Defendants WINDRIVER and DOES 1 through 50 were negligent and/or reckless in that they knew or should have known about DOES 51 through 100's acts of and propensity to commit acts of discrimination, harassment and retaliation and failed to take immediate and appropriate corrective action.

7. At all relevant times, defendants acted by and through their officers, agents and employees, including the defendants fictitiously named herein, each of whom was acting within the purpose and scope of his or her agency or employment and whose acts, omissions and conduct alleged herein were known to, authorized by and ratified by defendants.

8. At all relevant times, defendants, and each of them, including the defendants fictitiously named herein, acted as the agents of one another in the acts, omissions and occurrences herein alleged

9. The acts, omissions, conduct, contracts, promises and violations of the law herein alleged were done, made, performed or to be performed in substantial part in the City and County of San Francisco, State of California.

## **FACTUAL BACKGROUND**

10. When PLAINTIFF started working for Wind River. PLAINTIFF was very excited, motivated, and committed to providing a high level of job performance skills. PLAINTIFF love what PLAINTIFF do. That motivates him. PLAINTIFF take pride in his work. PLAINTIFF have worked hard to get to the level of experience, qualification, knowledge, and expertise that PLAINTIFF have attained in the last twenty years of his career. PLAINTIFF also served ten year career in the United States Navy, as an Operating Engineer in the Engineering department. PLAINTIFF believe that in many ways, PLAINTIFF have been taken advantage of, taken for granted, Ignored, lied to, thrown under the bus, and disrespected while being an employee here at Wind River.

11. PLAINTIFF have listed the events PLAINTIFF want to bring to your attention by year, starting with the initial solicitation by a Wind River recruiter. It his hope these issues can be corrected.


2015


October 2015

4
COMPLAINT FOR DAMAGES

12. On this day Sarah Foltz, a recruiter at Wind River, contacted him regarding a Building Engineer position which was available at their company. Sarah had located his professional profile which was posted on LinkedIn. His resume stated his qualifications as a certified journeyman-level Chief/Stationary Engineer. Sarah understood that PLAINTIFF was then employed with Contra Costa County, as a fulltime Stationary Engineer. At that point in time PLAINTIFF was responsible for the repairs, preventive maintenance, and operational readiness for over 40 different types of facilities. To accomplish those tasks PLAINTIFF had been assigned a county van with which PLAINTIFF provided coverage for the entire eastern part of Contra Costa County.

October 2015

13. Given our mutual interest, Sarah arranged the next step in Wind River's hiring procedure which was a formal interview with Noel Hernandez, one of their Facilities Engineers. When PLAINTIFF filled out the application, PLAINTIFF indicated an interest in becoming a Building Engineer. That was the position that PLAINTIFF applied for. At no point before the Wind River offer letter was presented to him, did Sarah, Noel, Mike Loughran, or anyone from Wind River ever disclose to him, that the position title available was that of a Facilities Engineer II. That would have been a red flag for him, and a deal breaker. PLAINTIFF a qualified and certified Stationary Engineer; an industry standard job classification. There are no levels to it. His career objective is Chief Stationary Engineer. Wind River's classification scheme is not based on industry standards. At Wind River a Facilities Engineer or Building Engineer is considered to be at the same level as Stationary Engineer. Facilities Engineer titles can have

5

levels to them. When PLAINTIFF signed the offer letter, PLAINTIFF was so excited that PLAINTIFF did not notice the (two Roman numerals) appended to the end of Facilities Engineer. Sarah asked him to not discuss his salary with Noel, which at the time PLAINTIFF thought was odd. But PLAINTIFF agreed to honor her request. PLAINTIFF had no intentions of discussing his salary with anyone. Noel Hernandez had been with the company for over seven years, and had reached the position of Supervisor of the day to day facilities operations, on the Alameda Campus. When PLAINTIFF asked Sarah what happened to the previous Engineer. She explained that the Facilities Engineers that were senior to Noel, either quit, passed away, or were let go. Sarah stated that Noel did not have the qualifications, experience, education, or skillset that PLAINTIFF have as a Stationary Engineer. She was not the only person at Wind River to tell him that. It was later after being employed for a while at Wind River, that PLAINTIFF found out that Noel's title was Facilities Engineer ll. PLAINTIFF had noticed that his title was the same as his in the company's corporate directory. This prompted him to go back and look at his offer letter. That's when PLAINTIFF paid attention it for the first time. PLAINTIFF then understood fully what had happened. Wind River does not use or fully understand industry classifications for Building Engineers, much less certified Stationary Engineers; although the company may have had employees with the title of "Facilities Engineer," it is not the same thing. The primary reason PLAINTIFF accepted the offer from Wind River is because it was an offer for permanent employee, whereas with Contra Costa County PLAINTIFF was a fulltime temporary employee. The county had placed a hiring freeze on Stationary Engineers, and although it was about to be lifted, PLAINTIFF live in Oakland, and Alameda is much closer to home than Concord. Wind

COMPLAINT FOR DAMAGES

River offered more perks. It seems to be the move to make even though PLAINTIFF was offered the same pay that PLAINTIFF was making with Contra Costa County.

November 2015

     14. November 9th 2015 was his first day of employment at Wind River. His area of responsibility included the buildings on the Wind River Campus numbered 300, 400, 500, and 600. The total area of square footage amounted to 350,000 sq. Building 400 was unoccupied; however several of its systems were operating, and had to be maintained. Manpower at the time included three corporate personnel. Two were Facilities Engineer II employees and one was classified as a Utility Technician. Typically there's one Stationary/Facilities Engineer per 100,000 sq. of work area, and one Utility Technician for every two Stationary/Facilities Engineers. Several months after starting to work PLAINTIFF noticed that PLAINTIFF was carrying most of the work load, and receiving most of the Customer Service Requests (CSR). PLAINTIFF was also helping the Utility Technician with different types of office/room setups. Noel Hernandez only supervised by assigning the work. This prompted him to contact Mike Loughran the offsite manager who was based out of Canton Massachusetts. He said that he would talk to Noel. It was mentioned to him by several individuals in and out of his department that PLAINTIFF was the most experienced, knowledgeable, and the hardest working facilities engineer that Wind River had ever had. Most of the repairs for equipment break downs were outsourced to contractors by the previously employed Wind River engineers whereas

PLAINTIFF perform most repairs in house with less help. Noel resigned his position as Supervisor at Wind River in June, 2016.

2016

August, 2016

15. Sometime in August, 2016 Mike Loughran resigned from his position at Wind River. Now that Noel, and Mike were gone. PLAINTIFF felt, and believed that it was a very good chance, that PLAINTIFF could get the opportunity to lead the department. PLAINTIFF had already proven myself, and showed his worth to the company. PLAINTIFF also have the experience, qualifications, expertise, and knowledge of all the systems in the buildings. This is a very important aspect of the job. PLAINTIFF thought PLAINTIFF had a good chance of becoming the new Facilities Supervisor. At a minimum, PLAINTIFF expected to be given the same authority as the company had given to Noel Hernandez whose qualifications were also those of a Facilities Engineer ll.

August, 2016

16. Jesse Frye the Logistics Supervisor was awarded the Facilities Supervisor position, although his title was changed to Senior Logistics Manager. After the promotion Jesse stated that he didn't have experience, qualifications, or expertise in the areas covered by Building

8

Engineering functions. He was noticeably nervous, and concerned when Noel, Hernandez turned

things over to him. PLAINTIFF would explain building engineering issues to Jesse but he didn't

understand them most of the time. Gradually over time he began ignore him. PLAINTIFF

mentioned to Jesse several times that PLAINTIFF needed help with maintenance and repairs.

Wind River also has a Utility Technician, Jacob Pratt, but Jesse assigned him facilities service

related tasks. This left him to do most building engineering operations by myself.


November 2016


17. On November 17th 2016 PLAINTIFF had a face to face meeting with Jason Sauvie,

Vice President of Finance, in response to a working document *which PLAINTIFF had

submitted to him to address important issues that needed to be dealt with in the Facilities

department. The issues dealt with facilities management, engineering building systems, life

safety equipment, preventive maintenance, and the Honeywell Energy Management System

(EMS) which monitors and helps manage the buildings on the entire Wind River campus.

PLAINTIFF recommended to Jason that if PLAINTIFF could hire one or two Utility

Technicians and report directly to him it would enable him to take care of all the repairs, and

preventive maintenance on the entire campus. Jason response was that it was a great idea, but he

already had too many people reporting directly to him. We also discussed the issues regarding

his job title and salary. When PLAINTIFF asked Jason if he believed the facilities supervisor

should have a working knowledge of all systems in the buildings. He affirmed unequivocally he

believed that a facilities supervisor should have such knowledge. Briefly, Jason acknowledged

9

that all the building systems, safety, and facilities management issues, which PLAINTIFF had detailed in the working document* and presented to him, were valid. Moreover, he said that he would follow up on the issues PLAINTIFF presented regarding his job title, classification, and salary. At the end of the meeting PLAINTIFF asked Jason for a copy of the company's job description for the Facilities Engineer II position. PLAINTIFF was pleased with the outcome of the meeting and looked forward to positive changes based on responses Jason had given to all the issues presented.

•     A copy of the working document referred to above is an addendum attached as AppendixI  located immediately after page 15.


December 2016

18. Sometime in December, 2016, Dennis Perry was hired as a Utility Technician. PLAINTIFF was told that Dennis would primarily work with him doing maintenance, and repairs. That only lasted for a short period of time. Jesse very quickly assigned Dennis tasks which were to assist Jacob, the other Utility Technician. Dennis complained to him about it. He stated that, he thought he was hired to perform building maintenance, and repairs. Dennis stated that several times while assisting Jacob he would leave, and return when the task was almost completed, or fully completed. Dennis stated that there were several times that he felt Jacob didn't need assistance, he simply wanted it. This situation adversely affected Dennis and his performance suffered as a result..

2017

January 2017

19. On the 5th of January, 2017, Jesse and PLAINTIFF had a meeting with the Wind River Human resource Director Liliane Cromer. Jason Sauvie, Vice President of Finance, had arranged for Jesse, and PLAINTIFF to meet with Liliane. The agenda for the meeting was called "Matters and Communication." PLAINTIFF described his background as a Stationary Engineer to Liliane. Jesse described his back ground. Liliane asked him about his title at Wind River. PLAINTIFF explained to her that his title Facilities Engineer ll did not reflect either his background or the tasks with which PLAINTIFF was engaged on a daily basis at Wind River. PLAINTIFF then asked Liliane for a copy the job description for Facilities Engineer ll. PLAINTIFF made an effort to explain to Liliane why the work that PLAINTIFF perform at Wind River is far above what is required for a Facilities Engineer ll Liliane dismissed his experience, qualifications, and expertise as irrelevant. Her solution was this: she told Jesse to continue to call contractors to perform work needed around the campus. The upshot of the meeting was: PLAINTIFF was told to report to Jesse once a week to update him on what PLAINTIFF was doing. A few months later Liliane resigned from her position at Wind River.

January 2017

20. On the 12th of January, 2017, PLAINTIFF had a follow up meeting with Vice President of Finance Jason Sauvie. He presented him with a job description document. It was for the Facilities Engineer, not for a Facilities Engineer ll. PLAINTIFF explained to Jason that the

COMPLAINT FOR DAMAGES

job description he gave him is similar to his qualifications and experiences as a Stationary Engineer. It appears to him that Wind River doesn't have a copy of the job description for a Facilities Engineer ll. If Wind River doesn't have a job description for the Facilities Engineer ll then how is it possible to assign that job title to anyone? His industry certified qualifications and experience along with his job performances clearly show what his capabilities are. The upshot of this meeting was: Jason said that he will fix his title, and pay. Nevertheless, PLAINTIFF have not heard, or seen, any changes regarding this matter since PLAINTIFF last spoke with Jason

March 2017

21. On the 17th of March, 2017, Dennis Perry, the other Utility Technician, resigned his position at Wind River. Jesse asked Jason if Wind River would be allowed to hire someone to replace Dennis, even though we were moving out of building 300. Jason informed Jesse that we could hire someone to replace Dennis. Jesse informed him that PLAINTIFF would hire the replacement; since PLAINTIFF knew what skills are necessary to perform the tasks involved. PLAINTIFF contacted the designated hiring agency and they sent a couple candidates to be interviewed but after that they didn't send any more. PLAINTIFF called the agency multiple times and left messages in an effort to find out what happened. No from the agency ever called him back. PLAINTIFF asked Jesse on several occasions why the agency was not sending anyone to be interviewed. Jesse said he would call them, but no candidates were ever sent, and no replacement for Dennis was ever hired.

COMPLAINT FOR DAMAGES

June 2017

       22. Sometime in June 2017 Jesse hired a moving contractor, to move Wind River's software Engineering Department engineers out their offices in building 300 and into building 600. After the move was completed, Jesse retained the services of one of the movers for several months. He setup a desk in the warehouse for him and assigned him tasks that should have been performed by Jacob, the remaining Utility Technician, or by him. Jessie also contracted electricians to install several flat screen display monitors throughout the campus buildings. When PLAINTIFF saw contractors performing the tasks PLAINTIFF asked Jesse why he had brought in contractors to perform the work. Jessie's response to him was that he didn't know PLAINTIFF could do such work, and he didn't know because he never told him about it nor did he ask him if PLAINTIFF could do it myself.

August 2017

       23. The Cold Office (B3042) issues regarding Building 500 are detailed in a separate document which is an addendum attached as Appendix II located immediately after page 16.

December 2017

24. Sometime in December 2017 his job responsibilities changed: PLAINTIFF no longer had responsibility for the maintenance of buildings 400 and 300. His new area of responsibility includes only buildings 500 and 600 for a total square footage of 150,000 sq.

2018

February 2018

25. On February 8, 2018, PLAINTIFF suggested to Jesse, that he and PLAINTIFF go to the roof together in order to determine where the Novo contractors were going to install the new condensers for the Engineering Computer Lab. It appeared to him that the condenser would block the compressor excess for air conditioner 2-1 roof top unit if installed as stipulated. Jesse decided that it was not necessary to go to the roof and take a look at how the proposed condenser installation location would cause operating issues for air conditioner 2-1. Jesse defended his position by stating "the structural engineer determines where the condensers are located, and that is the final decision". It appeared to him that Jesse disregarded his warning in order to notify him that he was the person who made the decisions in the matter, and therefore the matter was closed without further discussion. Since Liliane authorized Jesse to call contractors for issues which were previously under his control, there has been conflict between when to call in contractors and when the job should be left to him. See the entry for 5 January 2017* Jesse is well aware that PLAINTIFF don't like Wind River to call in contractors for jobs that should be handled by him. Minimally, PLAINTIFF should take a look at each job and make a determination whether it is a job that PLAINTIFF can perform or not. His outlook is to save the company money, not waste it.

14

Jess has gotten into the habit of calling in a contractor for every job without consulting him in the mater at all.*"Liliane dismissed his experience, qualifications, and expertise as irrelevant. Her solution was this: she told Jesse to continue to call contractors to perform work needed around the campus."The building 600 rooftop condenser issues are described in a separate document which is an addendum attached as Appendix lll immediately after page 17.

22 March 2018

26. On March 22nd, 2018, Jesse called in a refrigeration contractor company named Cold Storage took at an issue with the walk-in freezer in the Wind River Café, but he did not inform him beforehand about the issue. Previously, PLAINTIFF would have, always, first performed a preliminary assessment of similar issues. In the past, PLAINTIFF had diagnosed all problems with the walk in refrigerator and freezer. If PLAINTIFF didn't have a way to repair it then Wind River would call in their preferred contractor.

28 March 2018

27. On March 28th, 2018, Jesse removed some remarks PLAINTIFF had written in the comments section of a Customer Service Request (CSR-00118699) and replaced them with remarks of his own. After discovering this event, PLAINTIFF sent Jesse a text message asking him to please not remove any remarks that PLAINTIFF add to CSR system. He asked him which CSR PLAINTIFF was referring to, and PLAINTIFF told him, but PLAINTIFF didn't hear any more about this incident from him after that.

March 2018

28. On March 29th, 2018, the compressor for the Building 600 air conditioner (2-1) malfunctioned. This is a rooftop air conditioner unit, which is mentioned in the entry above for February 8, 2018, in which it was pointed out that the new condensers for the new Engineering Computer Lab was placed in such a way that it blocked the compressor's excess. This is the precise problem PLAINTIFF tried to warn Jesse about beforehand but he ignored his advice.

March 2018

29. On March 29th, 2018, Jesse called in an electrical contractor to troubleshoot and replace if necessary an electrical outlet in office (A3022). Jesse did not inform him of this issue. Considering that PLAINTIFF have replaced several electrical outlets throughout the Wind River facilities in the past, and considering that Wind River has several new replacement outlets in our storage cabinet, this incident seems inexplicable.

March 2018

30. On 30th March, 2018, PLAINTIFF was assigned a Customer Service Request (CSR-00118793) for office (B3040). The occupant reported that their office was exceedingly cold. At that time Honeywell contractors were on the Wind River campus upgrading the Heating,

COMPLAINT FOR DAMAGES

Ventilation, and Air Conditioning (HVAC) Energy Management System (EMS). Since starting his employment at Wind River in November, 2015, PLAINTIFF have made all the HVAC adjustments and repairs. However, it was not appropriate for him to make adjustments, or repairs, while the EMS is being upgraded by the Honeywell engineers who were onsite. If PLAINTIFF did so, then Honeywell's engineers, and PLAINTIFF, would be working at cross purposes. Therefore PLAINTIFF recommended that they should make any adjustment and repairs while they are onsite upgrading and repairing the Wind River EMS.

April 2018

31. On 3rd April, 2018, PLAINTIFF informed Vice President Jason Sauvie of the cold office issues in building 500 and the building 600 condenser issues. PLAINTIFF have not received any response from Jason since submitting the documents detailing the problems encountered. In the past he has responded to him about any issues PLAINTIFF bring to his attention but regarding these two issues he has not yet responded, which surprised him.

April 2018

32. On 11th April PLAINTIFF received CSR-00119372 in which it was reported that a decayed smell similar to a dead rat was evident. After PLAINTIFF inspected the area in question Jesse sent one of the Honeywell contractors who is here to upgrade the EMS to check on the dead rat decayed smell complaint. While at the site of the complaint the Honeywell contractor

arrived. PLAINTIFF asked him what he needed from him. He told him Jesse sent him to investigate the smell, which also surprised him.

April 2018

33. On 12th April, 2018, PLAINTIFF received his performance review from Jesse. This was the first time Jesse had spoken to him face to face since February 8, 2018.

April 2018

34. On 12th April, 2018, PLAINTIFF had a very bad tooth ache, and PLAINTIFF ask Jesse if PLAINTIFF could go home early. He asked him if PLAINTIFF could open the fire door which had been unintentionally dropped-closed by the Honeywell fire alarm system contractors. PLAINTIFF informed Jesse that PLAINTIFF would come in after a dentist appointment, to raise the fire door which the Honeywell fire alarm system installer activated and dropped. PLAINTIFF also explained to Jesse that the contractors would not be able to properly open the fire door. Later that day Jesse told him that they got the door up. What he failed to tell him was that they damaged it by opening it improperly. On 24 April 2018 PLAINTIFF saw a Vortex door contractor working on this fire door. They were removing the damaged hood, which was a result of the door having been rolled up too far. Consequently, it also damaged a part of the building

frame work. For this particular door unit, there are limit switches installed to prevent the door from rolling up into itself, which is designed to prevent the kind of damaged which occurred from happening. These limit switches are safety devices and only qualified people understand how to operate them. PLAINTIFF have been opening, and closing this fire door since November, 2015 and never damaged it. Jesse tried to cover up this mistake by telling him that the work the Vortex contractor was retained for had to do with required repairs needed. The fact is the Vortex contractor was removing damaged sheet metal which was due to the door having been opened too far by untrained people who were not qualified to open the door.

April 2018

35. On 25th April, 2018, PLAINTIFF observed a crane onsite in the parking lot next to building 600. PLAINTIFF had no idea why the crane was there since PLAINTIFF had no advance notification of the purpose for it. After investigating PLAINTIFF discovered the crane was here because it was needed to remove the bad compressor and install the new compressor for air conditioner (2-1) on the roof of building 600. PLAINTIFF also noticed that the computer lab condenser, which had been blocking the compressors excess, had been moved. PLAINTIFF had pointed this out in the document submitted to Jason. on the 8th of February, 2018.** The consequences of placing the computer lab condenser equipment in the wrong spot could have been avoided if jesses had listened to his advice. However, although the condenser has now been moved, no one has spoken to him to him about it. This is not the only issue where PLAINTIFF have been completely ignored.

COMPLAINT FOR DAMAGES

** The building 600 rooftop condenser issues are described in a separate document which is an addendum attached as Appendix lll immediately after page 17.

June 2018

36. On June 8, 2018, at approximately 9am the fire alarm system was activated all throughout building 500. As the building Engineer and an occupant of the building PLAINTIFF became very worried and concerned because Wind River experienced a serious fire in building 600 approximately a year and a half ago. PLAINTIFF had no idea as to what was causing the fire alarm system to be activated. While PLAINTIFF rushed to the room where the fire alarm panel is located people evacuated their offices with concern and uncertainty not knowing what was going on. Those PLAINTIFF encountered PLAINTIFF told to leave the building. PLAINTIFF immediately opened the fire alarm panel room and examined the fire alarm panel to determine what caused the alarm. The diagnosis reported by the system alarm panel was "Water flow PIV" PLAINTIFF understood what that meant, but PLAINTIFF was not sure whether there was a real fire occurring or simply a false alarm. PLAINTIFF was located on the first floor and did not see smoke or smell anything burning, but PLAINTIFF did not know what was happening on the second and third floors. As PLAINTIFF was about to leave the fire alarm panel room one of the installers of the new fire alarm system passed by him saying that he needed to silence the alarms. PLAINTIFF ask him if he was working on the system. While PLAINTIFF was engaged

with the installer, Jesse appeared and said that the property managers were at fault because they started to close the valve. The valve that Jesse was referring to is called a Post Indicator Valve (PIV) it is located outside the building. It provides information about whether the PIV is open or closed, closing the PIV incorrectly signaled to the fire alarm system that water is flowing into the building's fire sprinkler system. Therefore, the alarm was triggered.

37. After everything had settled down PLAINTIFF waited to receive an update from Jesse concerning the facts about the incident. Jesse did not provide any additional detailed information about the incident, so PLAINTIFF followed up with an email to Jesse an email asking him what happened. Jesse said the property management was conducting a mandatory annual required site inspection with their insurance coverage provider and they had to cycle the valve close and re-open them. PLAINTIFF should have definitely been included in that inspection. This is his job and what PLAINTIFF here to do.

38. The local fire alarm systems in building 500 should have been placed in a test or bypass mode before any valves or flow switches were tampered with. This is the normal protocol before initiating any test procedures. In the past it has always been his responsibility to put the building fire alarm system in bypass/test mode before any testing is performed onsite. It is also necessary to call the monitoring company whenever something in the system is been repaired, replaced, or serviced. Occasionally the utility technician is permitted to perform this function. For this incident, on June 8th, Jesse contacted the fire alarm monitoring company himself, which however, only enabled them to notify the Alameda fire department to ignore any fire alarms they might receive from our location. Contacting the monitoring company does not disarm the

building local fire alarm system. PLAINTIFF have previously explained this to Jesse. PLAINTIFF was not included, or involved with the installation of the new fire alarm system, nor have PLAINTIFF been trained to operate it. Wind River's Life safety systems and associated equipment is his responsibility as the Building Engineer. It is impossible to perform his responsibilities if PLAINTIFF not informed and kept up to date about the systems which PLAINTIFF responsible for operating and maintaining. Unfortunately, this is yet another example whereby Jesse's interference eliminates, undermines, or ignores his professional experience, certified qualifications, and proven knowledge as a Stationary Engineer. Wind River receives the negative consequences and is deprived of his capabilities.

## FIRST CAUSE OF ACTION
### UNLAWFUL DISCRIMINATION UNDER CIVIL CODE SECTION 51
### (By Plaintiffs against all Defendants)

39. Plaintiffs incorporate by reference the allegations contained in the Paragraphs contained
above as though fully set forth herein.

40. Under the *Unruh Civil Rights Act*, all persons are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all **business establishments,** including both private and public entities. The *Unruh Civil Rights Act* protects all persons against arbitrary and unreasonable discrimination by a business establishment (Civil Code section 51).

41. Defendant WINDRIVER is considered a business establishment in the State of California and

COMPLAINT FOR DAMAGES

is therefore subject to the requirements and restriction of the Unruh Civil Rights Act.

42. Defendant WINDRIVER, by and through its agents, yet-to-be-identified Defendants, deprived

Plaintiffs of the equal accommodations, advantages, and privileges afforded to their non-African-American colleagues at the 250 Howard Street, San Francisco, CA, Defendant WINDRIVER construction site.

43. As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiffs, they have sustained and continue to sustain substantial losses in wages.

44. As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiffs, they have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage, in an amount to be shown according to proof.

45. Defendant WINDRIVER has committed the acts herein alleged maliciously and oppressively,

with the wrongful intention of injuring Plaintiffs, with an improper and intentional motive amounting to malice and in conscious disregard of Plaintiffs' rights.

46. Plaintiffs have incurred and continue to incur legal expenses and attorney's fees in an amount to be shown according to proof.

Wherefore, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
### RETALIATION IN VIOLATION OF TITLE VI
#### (By All Plaintiffs Against All Defendants)

47. Plaintiffs incorporate by reference the allegations contained in the Paragraphs above as

23
COMPLAINT FOR DAMAGES

though fully set forth herein.

48. Title VI regulations provide that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subpart." 28 C.F.R § 42.108(e) (Department of Justice Regulation).

49. Not only did Defendants engage in harassing and discriminatory conduct towards Plaintiffs, but after Defendants learned that Plaintiffs were consistently reporting the harassment and discrimination they were experiencing to their supervisors, Defendants began retaliating against Plaintiffs as well.

50. Specifically, Defendants unlawfully terminated Plaintiff Ogans through the guise of alleging an unwillingness to cooperate because Plaintiff Ogans did not feel safe to shake one of his antagonist's hand during a meeting.

51. The above-described actions constitute retaliation pursuant to Title VI of the Civil Rights Act of 1964.

52. As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiffs, they have sustained and continue to sustain substantial losses in wages.

53. As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiffs, they have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damages in an amount to be shown according to proof.

54. Defendant WINDRIVER has committed the acts herein alleged maliciously and

oppressively,

with the wrongful intention of injuring Plaintiffs, with an improper and intentional motive

amounting to malice and in conscious disregard of Plaintiffs' rights. Accordingly, Plaintiffs

request punitive damages against Defendant WINDRIVER.

55. Plaintiffs have incurred and continue to incur legal expenses and attorney's fees in an

amount to be shown according to proof.

Wherefore, Plaintiffs pray for judgment as set forth below.

### THIRD CAUSE OF ACTION
### HARASSMENT IN VIOLATION OF FEHA
### (By All Plaintiffs Against All Defendants)

56. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs

above as though fully set forth herein.

57. Plaintiffs were at all times material hereto employees of Defendant WINDRIVER

covered by

California Government Code section 12900 et seq. prohibiting harassment in employment on the

basis of race and protected activities and requiring Defendant WINDRIVER to take all

reasonable steps to prevent discrimination, harassment and retaliation.

58. Such defendants were and are at all times material hereto employers within the meaning

of California Government Code section 12900 et seq.

59. Plaintiffs are and, at all relevant times herein, were African American males.

60. Such Defendants engaged in the following actions with the intent of harassing Plaintiffs

COMPLAINT FOR DAMAGES

on account of their race: harassed Plaintiffs by treating them differently than non-African American employees; retaliated against Plaintiffs for complaining about harassment and discrimination and engaging in protected activities. The incident created a hostile work environment.

61. Such defendants knew or should have known of these harassing actions because plaintiff reported them to such defendants and many of these harassing actions were open and obvious. Despite such defendants' actual and constructive knowledge of the above-described harassment, such defendant failed to take immediate and appropriate corrective action to stop the harassment. Furthermore, before the harassment occurred, such defendants failed to take all reasonable steps to prevent such harassment from occurring.

62. The acts of defendants, and each of them, as described above, constitute a pattern and continuous course of harassment on the basis of race in violation of California Government Code section 12900 et seq.

63. The race-based harassment of Plaintiffs by Defendants created an oppressive, hostile, intimidating and offensive work environment for Plaintiffs and interfered with Plaintiffs' emotional well being and ability to perform Plaintiffs' duties. The race-based harassment was sufficiently severe and pervasive as to materially alter Plaintiffs' conditions of employment and to create an abusive working environment.

64. Within one year of the date of the harassment herein alleged, Plaintiffs filed a charge of discrimination with the California Department of Fair Employment and Housing. The California Department of Fair Employment and Housing issued Notices of Case Closure (Right to Sue Letter). Plaintiffs have exhausted all of Plaintiffs' administrative remedies.

COMPLAINT FOR DAMAGES

Wherefore, Plaintiffs pray for judgment as set forth below.

### FOURTH CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF FEHA
**(By All Plaintiffs Against All Defendants)**

65. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs above as though fully set forth herein.

66. By the acts and omission alleged herein, defendants discriminated against plaintiffs on the basis of race in violation of California Government Code section 12900 et seq.

Wherefore, Plaintiffs pray for judgment as set forth below.

### FIFTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(h)
**(By All Plaintiffs Against All Defendants)**

67. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs above as though fully set forth herein.

68. At all relevant times herein mentioned, Government Code section 12940(h) was in full force and effect and was binding on defendants. This subsection provides that it is an unlawful practice for any employer or person to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden by the Fair Employment and Housing Act or because the person has filed a complaint, testified or assisted in any proceeding.

69. After Plaintiffs reported Plaintiffs' allegations of harassment, Defendants retaliated against Plaintiffs by either terminating Plaintiffs and/or discriminating against Plaintiffs.

70. By the acts and omissions alleged herein, Defendants violated California Government Code section 12940(h).

Wherefore, Plaintiffs pray for judgment as set forth below.

## SIXTH CAUSE OF ACTION
## WRONGFUL DISCHARGE RESULTING FROM HARASSMENT AND DISCRIMINATION
### (By Plaintiff Ogans Against All Defendants)

71. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs above as though fully set forth herein.

72. Despite Defendant WINDRIVER's actual and constructive knowledge of the above-described harassment and discrimination, Defendant WINDRIVER failed to take immediate and appropriate corrective action to stop the harassment and discrimination. Furthermore, before the harassment and discrimination occurred, Defendant WINDRIVER failed to take all reasonable steps to prevent such harassment and discrimination from occurring.

73. Instead, Defendant WINDRIVER discriminated against and harassed Plaintiffs on the basis of race by terminating Plaintiffs' employment for pretextual reasons.

74. Defendant WINDRIVER's termination of Plaintiffs constituted unlawful discrimination in employment on account of race in violation of California Government Code sections 12940 et seq.

75. Defendant WINDRIVER's termination of Plaintiff Ogans violated the public policies set forth above.

Wherefore, Plaintiffs pray for judgment as set forth below.

## SEVENTH CAUSE OF ACTION
### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
#### (By Plaintiff Ogans Against All Defendants)

76. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs above as though fully set forth herein.

77. Defendant WINDRIVER's wrongful termination of Plaintiffs constituted a violation of California Government Code sections 12940 et seq. and the California Constitution.

78. Defendant WINDRIVER's termination of Plaintiffs violated the public policies set forth above.

Wherefore, Plaintiffs pray for judgment as set forth below.

## EIGHTH CAUSE OF ACTION
### NEGLIGENCE
#### (By All Plaintiffs Against All Defendants)

79. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs above as though fully set forth herein.

80. Defendants, and each of them, owed the following duties, among others, to Plaintiffs:

    A. The duty to exercise reasonable care in performing their functions, duties and responsibilities as owners and operators of Defendant WINDRIVER, including, but not limited to, the duty to exercise reasonable care in the ownership, management and operation of Defendant WINDRIVER.

    B. The duty to exercise reasonable care in performing their functions, duties and responsibilities as employers of defendants DOES 1 through 99, including, but not limited to, the duty to exercise reasonable care in the screening, hiring,

employment, training, supervision, monitoring, controlling and disciplining of such employees.

    C. The duty to exercise reasonable care to protect Plaintiffs from injury.

81. Defendants, and each of them, knew, or should have known with reasonable certainty, that Plaintiffs would suffer monetary and emotional and physical damages as set forth herein if Defendants, and each of them, failed to perform their duties in a proper manner and fashion, as was the reasonable standard for each of said Defendants.

82. Defendants, and each of them, failed and neglected to perform such functions, duties and responsibilities properly, adequately and within or above the prevailing standard of care, so that defendants, and each of them, breached their individual duties of care to Plaintiffs.

83. As a result of the above-described breach, Plaintiffs were injured as herein alleged.

84. Plaintiffs are informed and believe and thereon allege that the damages described below arose out of, were attributable to and are directly and proximately caused by Defendants' breach of such duties.

Wherefore, Plaintiffs pray for judgment as set forth below.

## NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (By All Plaintiffs Against All Defendants)

85. Plaintiffs incorporate herein by reference the allegations contained in the Paragraphs above as though fully set for therein.

86. California case law allows a plaintiff to recover damages for intentional infliction of

emotional distress if he or she suffers severe emotional injury caused by the Defendant's outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, emotional distress.

87. Plaintiffs are informed and believe, and thereon allege, that the actions of Defendants were intentional, extreme, and outrageous. Plaintiffs are further informed and believe, and thereon allege, that such actions were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing Plaintiffs serious emotional distress.

88. As a direct and proximate result of the actions of Defendants, Plaintiffs suffered severe emotional distress, which has caused Plaintiffs to sustain severe injuries to their person, all to their damage in an amount to be shown according to proof and within the jurisdiction of this court.

89. As a direct, legal and proximate result of the aforesaid tortious conduct of Defendants, all to Plaintiffs' damages in an amount to be shown according to proof.

Wherefore, Plaintiffs pray for judgment as set forth below.

## TENTH CAUSE OF ACTION
### WRONGFUL CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY
#### (Plaintiff Russell Against All Defendants)

90. Plaintiffs incorporate by reference the allegations contained in the Paragraphs above as though fully set forth herein.

91. Defendants constructively terminated Plaintiff Russell's employment in violation of various fundamental public policies underlying both state and federal laws when they forced Plaintiff's transfer to a substantially lower paying job because Plaintiff had the temerity to complain about the hostile, racist work environment. Defendants violated various laws including

31

but not limited to Government Code Sections 12940 et seq., and California Labor Code Sections 6310, 1102.5, and 232.5

92. As a proximate result of Defendants' conduct, as alleged above, Plaintiff has been harmed in that he has suffered the loss of wages, benefit and additional amounts of money he would have received if he had not been constructively terminated from his position with Defendant WINDRIVER, in an amount to be shown according to proof.

93. As a further proximate result of Defendants' actions as alleged hereinabove, Plaintiff has been harmed in that he has suffered extreme and continuing humiliation, mental anguish and emotional distress, in an amount in excess of the minimum jurisdiction of the Court, according to proof.

94. The above recited actions of Defendants were committed with malice, fraud and/or oppression and in reckless disregard of the rights of Plaintiff. Plaintiff is informed and believes and on that basis alleges that the acts alleged herein taken towards him were carried out by agents of Defendants in a malicious, oppressive and fraudulent manner in order to harm Plaintiff, or with a willful and conscious disregard of Plaintiff's rights, thereby causing him unjust hardship, humiliation and/or emotional distress. Such conduct was despicable and justifies an award of punitive damages against Defendants in an amount sufficient to deter them from engaging in such conduct again in the future, in an amount to be shown according to proof.

Wherefore, Plaintiffs pray for judgment as set forth below.

## PRAYER FOR RELIEF

COMPLAINT FOR DAMAGES

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants, and each of them, according to proof, as follows:

1. For general and special damages, including lost wages, in a sum in excess of the minimum jurisdictional limit of this Court, according to proof at trial;

2. For reasonable attorney's fees;

3. For costs of suit incurred herein;

4. For exemplary and punitive damages; and

5. For such other and further relief as the Court may deem just and proper.

DATED: March 7, 2019

By: _____

IRVIN FARRIOT